**STANDARD OIL COMPANY,**
Appellant,

v.

**Robert K. BROWN, Doing Business as Bob Brown's Standard Service,**
Appellee.

No. 16093.

United States Court of Appeals
Fifth Circuit.

Nov. 6, 1956.

William K. Meadow, Griffin B. Bell, Atlanta, Ga., Spalding, Sibley, Troutman, Meadow & Smith, Atlanta, Ga., of counsel, for appellant.

John L. Westmoreland, Jr., Atlanta, Ga., for appellee.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

The decision of this case depends on the question whether the proviso in Section 2(b) of the Clayton Act as amended by the Robinson-Patman Act [1] which, following a prohibition against selling at a discriminatorily lower price to a purchaser, permits the seller to defend by showing that his lower price "was made in good faith to meet an equally low price of a competitor" is to be construed as if it were written "was made in good faith to meet a *lawful* equally low price."

The plaintiff below, a purchaser from the defendant Standard Oil Company, charged that Company with having sold gasoline products to four of his competitors at a price lower than it sold to him. This was admitted, but explained by the seller on the ground that its competitors had made offers to the four purchasers somewhat lower than Standard's prices; and that under the proviso in 2(b), supra, it had the right to meet this competitive price in good faith. The plaintiff sought triple damages. The trial court submitted the case to the jury on a charge which appellee challenged because it failed to include the requirement that the low price which appellant sought to meet must be a lawful price. The jury verdict was for the Standard Oil Company, the seller. Thereupon, appellee moved for a new trial on the ground of the alleged error in the charge, together with other grounds. The court granted the motion, expressly basing its action on this ground.[2] Appellee here contends that it is not clear that the trial court placed its grant of new trial on this ground

[1] "(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: Provided, however, That nothing contained in sections 12, 13, 14–21, and 22–27 of this title shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor." 15 U.S.C.A. § 13(b).

[2] "Among other grounds of the motion for a new trial, plaintiff complains of the court's charge with respect to the contention of plaintiff that 'the price of a competitor of defendant, which price defendant sought to meet, must be a lawful price.' Upon consideration of the motion for a new trial the court is convinced that its charge with respect to that contention of the plaintiff was erroneous and prejudicial to the plaintiff and requires the grant of a new trial."

alone. We reject this contention because we think it perfectly clear that the court did so.

■ Thereafter the case was tried again, the court charging the jury as requested by the appellee, and a verdict was returned in his favor which was trebled by the court. Appellant here contends that the court's grant of the motion for new trial was error; that it was an error of law which can be corrected only by our reversing the second judgment and reinstating the verdict of the jury on the first trial and causing judgment to be entered in its favor thereon.

Agreeing, as we do, with this view, we do not think it necessary to outline the remaining allegations of error which appellant asserts occurred during the second trial.

■ This Court has the power to reinstate the first verdict where the trial court has clearly based its grant of a new trial on an error of law, 28 U.S.C.A. § 2106.[3] 6 Moore's Federal Practice, ¶59.15, p. 3904.[4] Finn v. American Fire & Casualty Co., 5 Cir., 207 F.2d 113; Marshall's U. S. Auto Supply, Inc., v. Cashman, 10 Cir., 111 F.2d 140; Pettingill v. Fuller, 2 Cir., 107 F.2d 933.

No case is cited by the appellee in which the courts have denied to a seller the benefit of the proviso in § 2(b) because of the failure of the seller to show that his good faith making of a lower price was to meet a *lawful* equally low price of a competitor. The burden of his argument is that in two Supreme Court cases, Federal Trade Commission v. A. E. Staley Manufacturing Co., 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338, and Standard Oil Company v. Federal Trade Commission, 340 U.S. 231, 71 S. Ct. 240, 95 L.Ed. 239, the Court used language from which it should be concluded that the word "lawful" must be impliedly inserted in the terms of § 2(b).

The first of these cases made no mention of the word "lawful." It held merely that where the seller sought to justify using an illegal basing point pricing system because its competitors did this there was ample factual basis for the Federal Trade Commission's finding that this was not a lower price "made in good faith" to meet an equally low price of a competitor.

In the Standard Oil case the word "lawful" appears for the first time, but it is used part of the time and is omitted part of the time.[5] Its use is not discussed. From a careful reading of the opinion it seems clear that the Court did not intend to add as a requirement to the exculpatory clause that the seller must affirmatively prove that the lower price he sought to meet was one which did not, in fact, result from some violation unknown to him, of the Robinson-Patman Act; the case did not involve this issue. Rather it dealt with an ap-

---

3. *"Determination*
"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." 28 U.S.C.A. § 2106.

4. "Where the appellate court finds that the grant of a new trial was the result of prejudicial legal error it should remand for such further proceedings as the circumstances warrant, which may, when appropriate, be that the verdict or judg-

ment following the first trial be reinstated and judgment entered accordingly." 6 Moore's Federal Practice, ¶59.15, p. 3904.

5. Of great significance is the first expression as to the effect of "equally low prices" in the Court's opinion. The Court said:
"For the reasons hereinafter stated, we agree with the court below that the sales were made in interstate commerce but we agree with petitioner that, under the Act, *the lower price to the jobbers was justified if it was made to retain each of them as a customer and in good faith to meet an equally low price of a competitor."* (Emphasis supplied.)

peal from an order of the Federal Trade Commission, affirmed by the Court of Appeals, 7 Cir., 173 F.2d 210, denying the benefits of § 2(b) to a seller if in fact the lower price meeting the standards of § 2(b) adversely affected competition. In reversing the judgment in favor of the Federal Trade Commission, the Court assumed that the Standard Oil Company had brought itself within the § 2(b) proviso. Contrasting the case with the earlier Staley case the Court said:

> "In contrast to that factual situation, the trial examiner for the Commission in the instant case has found the necessary facts to sustain the seller's defense * * *, and yet the Commission refuses, as a matter of law, to give them consideration." [6]

The Supreme Court made this statement that the examiner found the necessary facts to sustain the § 2(b) defense, although there was no finding as to the lawfulness of the prices of the competitors.

As had been said already, the Supreme Court used the words "equally low prices" and "lawful equally low prices" interchangeably. In its discussion of the earlier Staley case, it is quite apparent that it approved of the construction which takes the language precisely as it was written by Congress without adding the word "lawful."

Moreover, it is quite significant that, in discussing the economic theory of the Robinson-Patman Act, the Court used a striking illustration in which it is evident that the Court did not intend to add anything to the language of the statute. The Court said:

> "We need not now reconcile, in its entirety, the economic theory which underlies the Robinson-Patman Act with that of the Sherman and Clayton Acts [15 U.S.C.A. § 1 et seq.]. It is enough to say that Congress

did not seek by the Robinson-Patman Act either to abolish competition or so radically to curtail it that *a seller would have no substantial right of self-defense against a price raid by a competitor.* For example, if a large customer requests his seller to meet a temptingly lower price offered to him by one of his seller's competitors, *the seller may well find it essential, as a matter of business survival, to meet that price rather than to lose the customer.* It might be that this customer is the seller's only available market for the major portion of the seller's product, and that the loss of this customer would result in forcing a much higher unit cost and higher sales price upon the seller's other customers. There is nothing to show a congressional purpose, in such a situation, to compel the seller to choose only between ruinously cutting its prices to all its customers to match the price offered to one, or refusing to meet the competition and then ruinously raising its prices to its remaining customers to cover increased unit costs. There is, on the other hand, *plain language and established practice which permits a seller, through § 2(b), to retain a customer by realistically meeting in good faith the price offered to that customer,* without necessarily changing the seller's price to its other customers." (Emphasis supplied.) Standard Oil Co. v. Federal Trade Comm., 340 U.S. 231, 249, 250, 71 S.Ct. 240, 249.

There is no mention here of "lawful" price offered to the customer.

The Supreme Court returned the case to the Federal Trade Commission to make its findings as to whether the Standard Oil Company had proven itself to come within § 2(b). The Commission reviewed the matter and failed to give full effect to the Supreme Court's opinion

---

**6.** Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 243, footnote 9, 71 S.Ct. 240, 246.

as to the availability of § 2(b) relief, and the case was again appealed to the Court of Appeals for the 7th Circuit. That Court reversed the decision of the Commission and there, for the first time, discussed the use of the word "lawful" in connection with "equally lower prices." As to this matter the court said:

> "It is interesting and highly significant that the statute employs the language, 'made in good faith to meet an equally low price of a competitor', but that the Supreme Court in the instant case adds the word 'lawful,' so that it reads 'made in good faith to meet a lawful and equally low price of a competitor', 340 U.S. at pages 238 and 246, 71 S. Ct. at pages 244 and 248. We do not know, of course, why the Supreme Court added the word 'lawful,' but we strongly suspect that it was for the purpose of giving emphasis to its previous decisions that a 'good faith' defense was not available to a seller who had met an unlawful price. In this connection, it is also pertinent to note that in the instant situation there is no finding, no contention and not even a suspicion but that the competing prices which petitioner met were lawful. * * * " 233 F.2d 649, 653.

However, to us it appears that the Supreme Court may have used the word "lawful" merely because it was dealing with a case in which the facts showed that an equally low price had been met and the record was silent as to whether such competitor's price was illegal; the Court, under these circumstances, merely took the case as it stood and referred to the competitor's equally low prices as "lawful" because there was nothing in the record to indicate they were not lawful. The use of the word was not to establish a standard that must be met;

it was rather a description of the facts presented in that case.

■ Here, as in the Standard Oil case quoted from above, there is "no finding, no contention and not even a suspicion (in the record) but that the competing prices which petitioner met were lawful." Appellee here contends that there is a burden on the seller to prove that the competing price was lawful. There is certainly no authority for this in either the Supreme Court or later Court of Appeals opinions in the case referred to at such great length. The most, it seems to us, that could be made out of the use by the Supreme Court of the word "lawful" is that if the seller discriminates in price to meet prices that he knows to be illegal or that are of such a nature as are inherently illegal, as was the basing point pricing system in the Staley case, supra, there is a failure to prove the "good faith" requirement in § 2(b). There is nowhere a suggestion that the seller must carry the burden of proving the actual legality of the sales of its competitors in order to come within the protection of the proviso.[7]

Finally, it is interesting to note the legislative history of this section as quoted extensively in footnote 14 on pages 247–249 of 340 U.S., on pages 248–249 of 71 S.Ct. of the Supreme Court decision. Almost uniformly the comments there reproduced indicate that Congress meant exactly what it said when it provided that the Act was not violated by a seller's giving a discriminatorily lower price to selected customers if such lower price "was made in good faith to meet an equally low price of a competitor".

■ We conclude, therefore, that the trial court properly charged the jury as to this matter on the first trial, and its grant of a new trial to permit another

7. Not only is there no precedent for requiring such proof, but it is apparent that such a requirement would practically destroy the value of the proviso, for the legality vel non of the competitor's prices depends on many facts, including what it might be doing to meet low prices of its competitors. The inquiry into these collateral issues would be endless.

jury to pass on it with a charge including the word "lawful" was error.

The judgment is reversed and vacated and the case is remanded to the trial court with instructions to enter judgment for appellant on the verdict of the jury in the first trial.