STANDARD MOTOR PRODUCTS, INC.,
Petitioner,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 88, Docket 25091.

United States Court of Appeals
Second Circuit.

Argued Feb. 5, 1959.

Decided April 15, 1959.

Edward S. St. John, New York City (Thomas P. Dougherty, New York City, on the brief), for petitioner.

James E. Corkey, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C. (Earl W. Kintner, Gen. Counsel, and Francis C. Mayer and Edwin S. Rockefeller, Attys., Federal Trade Commission, Washington, D. C., on the brief), for respondent.

Before CLARK, Chief Judge, MADDEN, Judge, United States Court of Claims,* and HINCKS, Circuit Judge.

CLARK, Chief Judge.

This proceeding brings for review an order of the Federal Trade Commission directing the petitioner, Standard Motor Products, Inc., to cease and desist from discriminating in the net sale prices of its products in violation of § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). The Commission's order is directed against Standard's practices of making rebates to its distributors based on volume sales. Standard's pricing practices here in question are closely similar to those of other manufacturers of replacement auto parts, and this case is one of

several instituted by the Commission throughout the industry.[1]

Standard manufactures and sells to distributors throughout the United States automotive ignition parts and related items for replacement purposes. These distributors do not have exclusive territories, but compete with other dealers within a fifty-mile or larger radius in the resale of petitioner's products. The majority of petitioner's customers buy from it under one of its two standard rebate contracts, which each grant the distributor a percentage rebate of the list price of the purchased articles, varying with the net amount of its purchases in the calendar year from nothing at all for purchases totaling less than $1,800 to a maximum of 20% of list price where the distributor's annual purchases are more than $100,000. In addition, petitioner sells a substantial portion of its output to distributors who have joined together in co-operative buying groups. These distributors order and receive shipments direct from Standard exactly as if they did not belong to a buying group; but payments, made through the group office, are for list price, less a percentage discount equivalent to the rebate allowed under petitioner's uniform contracts for annual purchases equal to the aggregate purchases of the group. The proof before the trial examiner showed, as is apparent from the above facts, that in many instances competing distributors in effect buy petitioner's products at different net prices. Both the hearing examiner and the Commission concluded that these pricing practices violated the Robinson-Patman Act.

■ The conditions in the replacement auto parts industry disclosed by the

---

* Sitting by designation pursuant to the provisions of 28 U.S.C. § 291(a).

1. See Moog Industries, Inc. v. F. T. C., 8 Cir., 238 F.2d 43, affirmed 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370; C. E. Niehoff & Co. v. F. T. C., 7 Cir., 241 F.2d 37, modified F. T. C. v. C. E. Niehoff & Co., 355 U.S. 411, 78 S.Ct. 377, 2 L. Ed.2d 370; P. Sorensen Mfg. Co. v. F. T. C., 100 U.S.App.D.C. 406, 246 F.2d 687;

P. & D. Mfg. Co. v. F. T. C., 7 Cir., 245 F.2d 281, certiorari denied 355 U.S. 884, 78 S.Ct. 150, 2 L.Ed.2d 114; E. Edelmann & Co. v. F. T. C., 7 Cir., 239 F. 2d 152, certiorari denied 355 U.S. 941, 78 S.Ct. 426, 2 L.Ed.2d 422; Whitaker Cable Corp. v. F. T. C., 7 Cir., 239 F.2d 253, certiorari denied 353 U.S. 938, 77 S. Ct. 813, 1 L.Ed.2d 761; In the Matter of Guaranteed Parts Co., F. T. C. Docket 6987; and cases cited note 2 infra.

record here seem precisely those which the Robinson-Patman Act was intended to eliminate. The statute was enacted in direct response to the growth of a few nationwide chain store corporations in the 1920's and 1930's. It is evident from the legislative history that Congress sought to curtail the concentration of economic power in the distributive area of the economy by eliminating inequalities derived from sheer economic power, while at the same time not stifling competition based on real cost savings and increased efficiency. H.R.Rep. No. 2287, 74th Cong., 2d Sess. 6–7; Sen.Rep. No. 1502, 74th Cong., 2d Sess. 3. See also F. T. C., Final Report on the Chain Store Investigation (1934); Sen.Res. 224, 70th Cong., 1st Sess., 69 Cong.Rec. 7857 (1928). The volume discounts here—which relate to the amount of the customer's total annual purchases, and not to individual sales—do not reflect any cost savings which might accrue to petitioner on large individual orders, but merely benefit the more powerful purchasers in the industry. And the buying groups brought into being by the widespread use of these discounts make no improvement in the efficiency or real cost of distributing auto parts to the public, but, as is clear from the testimony of Standard's own witnesses, function entirely through their aggregate buying power.

On this petition to review petitioner vigorously attacks the Commission's finding that its pricing activities have an unlawful effect on competition in distributors' resale of its products. It stresses the testimony of many of its distributors that they never lost sales because of having to pay a higher price than competitors paid for Standard's products and emphasizes its proof of several competitive situations where a distributor paying a higher net price than its competitors nevertheless maintained a more prosperous and more rapidly expanding business. The statute, however, speaks of effects on competition —not on competitors—and substantially probable, rather than actual, effects are all that it requires: It prohibits all price discriminations "where the effect of such discrimination *may be* substantially to lessen *competition* or *tend* to create a monopoly in any line of commerce, or to injure, destroy, or prevent *competition* with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them." 15 U.S.C. § 13(a). (Emphasis supplied.) It is clear that petitioner's varying volume rebate schedules and the similar practices of other manufacturers in the industry have been a substantial factor in the formation of the distributor's joint purchasing groups. And, as petitioner readily acknowledges, competition as to price in the resale of its products is presently all but completely nonexistent because distributors consistently follow manufacturers' suggested resale price lists. It is apparent, in view of this clear evidence of the distributors' competitive mood, that the growth of joint purchasing groups among the distributors can tend only further to lessen competition,[2] and petitioner's pricing practices may well foster this tendency. In short, we have here not the bare minimum prima facie case held sufficient in F. T. C. v. Morton Salt Co., 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196, 1 A.L.R.2d 260, and Samuel H. Moss, Inc. v. F. T. C., 2 Cir., 148 F.2d 378, certiorari denied 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 438, but rather an industry-wide pricing system with decided anticompetitive tendencies. Cf. F. T. C. v. Cement Institute, 333 U.S. 683, 721–726, 68 S.Ct. 793, 92 L.Ed. 1009; F. T. C. v. A. E. Staley Mfg. Co., 324 U.S. 746, 65 S.Ct.

2. These buying groups have themselves been the subject of Commission proceedings. In the Matter of Warehouse Distributors, Inc., F. T. C. Docket 6837; In the Matter of Mid-West Warehouse Distributors, Inc., F. T. C. Docket 6888; In the Matter of Metropolitan Automotive Wholesalers Cooperative, Inc., F. T. C. Docket 5724.

971, 89 L.Ed. 1338; Corn Products Refining Co. v. F. T. C., 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320. Whatever conflict may occasionally arise between the Robinson-Patman Act and more fundamental antitrust goals, cf. Automatic Canteen Co. of America v. F. T. C., 346 U.S. 61, 74, 73 S.Ct. 1017, 97 L.Ed. 1454; Standard Oil Co. v. F. T. C., 340 U.S. 231, 249, 71 S.Ct. 240, 95 L.Ed. 239, we perceive none in the Commission's action in this case.

■■ Petitioner also seeks to avail itself of the affirmative defense provided in § 2(b) of the Act, 15 U.S.C. § 13(b), which exempts differences in price made in good faith to meet an equally low price offered the favored purchaser by a competitor. As this defense is made only as to its sales to joint purchasing groups, the Commission's order must stand in any event, since the standard distributor contracts have themselves been shown to result in discriminations in price which may lessen competition. Moreover, it is well settled that a lowered price is within § 2(b) only if it is made in response to an individual competitive demand, and not as part of the seller's pricing system, F. T. C. v. Cement Institute, supra, 333 U.S. 683, 721–726, 68 S.Ct. 793, 92 L.Ed. 1009; F. T. C. v. A. E. Staley Mfg. Co., supra, 324 U.S. 746, 65 S.Ct. 971, 89 L.Ed. 1338, and only if it is used defensively to hold customers rather than to gain new ones. Standard Oil Co. v. F. T. C., 340 U.S. 231, 249–250, 71 S.Ct. 240, 95 L.Ed. 239. The testimony of petitioner's own vice president belies its assertion here that net prices paid by a buying group were always individually negotiated, and not merely an outgrowth of its standard distributor contracts; and the record is also clear that petitioner gained many new customers through the buying groups with which it dealt. Hence the Commission's rejection of Standard's claim under § 2(b) is supported by substantial evidence.

We see no further merit in petitioner's contentions. Nor do we deem it neces-

sary or useful to entertain its motion to strike portions of the Commission's and its own appendices.

Order affirmed.