SUNSHINE BISCUITS, INC., Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.

No. 13570.

United States Court of Appeals Seventh Circuit.

July 11, 1962.

Armand W. DeBirny, Long Island City, N. Y., Luther C. McKinney, Chicago, Ill., Chadwell, Keck, Kayser, Ruggles & Mc-Laren, Chicago, Ill., of counsel, for petitioner.

J. B. Truly, Asst. General Counsel, Alvin L. Berman, Attorney, Federal Trade Commission, James McI. Henderson, General Counsel, Washington, D. C., for respondent.

Before SCHNACKENBERG, KNOCH, and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Petitioner, Sunshine Biscuits, Inc., a New York corporation doing business in this Circuit, seeks review of a cease and desist order issued by the Federal Trade Commission in an administrative proceeding upon a complaint charging Sunshine with violation of Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C.A. § 13(a).[1]

The complaint charged that Sunshine, through its Velvet-Krun-Chee Division, had violated Section 2(a) of the Act by "selling certain products to some purchasers at prices substantially higher than those charged other purchasers of these products of like grade and quality who have been and are now competing with said unfavored purchasers." While the complaint alleged that Sunshine sold various grocery products, the only specific violation charged was that Sunshine "has granted and is now granting certain large retail grocery and drug chains located in Cleveland, Ohio 5 percent volume plus 2 percent cash discounts on 'Krun-Chee' potato chips," which discounts "were not offered to all other purchasers in competition with said favored purchasers."

Sunshine in its answer admitted selling to some retail purchasers at prices higher than those charged other competing retail purchasers, but denied that this was a violation of Section 2(a) by pleading as a defense the proviso to Section 2(b) of the amended Clayton Act, 15 U.S.C.A. § 13(b).[2]

The evidence submitted by the Commission counsel before the hearing exam-

---

1. Section 2(a) of the Act, as amended, provides in part:

"(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, * * * where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * *."

2. Section 2(b) of the Act, as amended, provides in part:

"(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price * * * the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to issue an order terminating the discrimination: *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price * * * to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor * * *."

iner consisted of a stipulation in which Sunshine admitted all essential elements necessary to establish a prima facie violation of Section 2(a). The stipulation listed 19 purchasers to which Sunshine granted discounts, and recited that the effect of Sunshine's discrimination in the granting of discounts "may be to injure, destroy, or prevent competition" between the purchasers who received the discounts and those who did not. Sunshine thereafter submitted evidence to support its Section 2(b) defense.[3]

The hearing examiner dismissed the complaint on the ground that Sunshine had established its defense under Section 2(b) in that Sunshine's discounts were made in good faith to meet the equally low prices of its competitors. Counsel for the Commission contended that Sunshine could lawfully meet its competitors' lower prices *only to retain* its customers. The hearing examiner held, however, that Sunshine was entitled to meet these lower prices even though, in so doing, it obtained new customers.

The Commission, on review, vacated the hearing examiner's decision and issued its own findings and opinion and the order to cease and desist. The Commission stated that, " * * * in order not to lose some of its customers [Sunshine] reduced its prices to certain customers to meet the lower prices of its competitors. In a number of instances, however, [Sunshine] offered discounts matching those granted by competitors to their customers and was thus able to obtain new customers." The Commission concluded that Sunshine had violated Section 2(a) because the Section 2(b) de-

fense of meeting competition "is limited in its scope to those situations in which a seller is acting in self-defense against competitive price attacks and is not applicable where the seller makes discriminatory price reductions in order to obtain new customers."

Sunshine contends (1) that the Commission erred in limiting the application of the Section 2(b) defense to situations where a seller meets a competitor's price in order to retain its customers, (2) that the finding that Sunshine obtained some new customers by meeting its competitors' equally low prices is not supported by substantial evidence,[4] and (3) that the cease and desist order is too broad.

The primary question is whether the language of Section 2(b) was correctly limited by the Commission to situations in which Sunshine granted discounts equal to those of its competitors in order to retain its customers, or whether the Section also permitted Sunshine to grant similar discounts to purchasers who up to then were not its customers.

The Commission's counsel contends that the proviso to Section 2(b) authorizes the good faith meeting of a lawful lower price of a competitor only in self-defense to retain a customer against a competitor's price raid; that if Section 2(b) were interpreted so as to excuse Sunshine's discriminatory pricing by which it expanded its business, Section 2(a) would, for practical purposes, be written out of the Act; and that Section 2(b) is an exception to the basic policy objectives of Section 2(a) and therefore should be strictly construed

3. Sunshine's evidence established that among the distributors competition for the sale of potato chips in the Cleveland area was sharp, and that other distributors were selling potato chips at discounts of 7% to certain purchasers and 5% to others.

4. Sunshine had acquired Velvet Peanut Products, Inc., a Michigan corporation, June 28, 1957, and Krun-Chee Distributing, Inc., an Ohio corporation, February 27, 1959. Velvet Peanut Products, located in Detroit, produced Krun-Chee potato chips that had been marketed through Krun-Chee Distributing, Inc., an independent distributor, in Cleveland, Ohio. After Sunshine acquired these corporations it continued producing potato chips and selling them in Cleveland through its Velvet-Krun-Chee Division. In view of our disposition of the initial and primary legal question presented in this review, the fact issue whether Sunshine obtained certain of its retail purchasers of potato chips after it had acquired Krun-Chee Distributing, Inc. becomes moot.

against those who engage in discriminatory pricing. The Commission's counsel relies on Standard Oil Co. v. Federal Trade Commission, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239, and Standard Motor Products, Inc. v. Federal Trade Commission, 2 Cir., 265 F.2d 674, as well as on the legislative history of the Act.

In Standard Oil, the Supreme Court stated that the core of the Section 2(b) defense "consists of the provision that wherever a lawful lower price of a competitor threatens to deprive a seller of a customer, the seller, to retain that customer, may in good faith meet that lower price." Supra, 340 U.S. at 242, 71 S.Ct. at 246. Relying upon this and similar language in the Court's opinion, the Commission's counsel asserts that the case holds that a seller may lawfully meet a lower price of a competitor only to retain its customers. As we read the opinion, the issue was whether "it is a complete defense to a charge of price discrimination for the seller to show that its price differential has been made in good faith to meet a lawful and equally low price of a competitor." Supra, 340 U.S. at 246, 71 S.Ct. at 248.

Since the Standard Oil Company had made the lower price in question only to retain its customers and had not acquired new customers thereby, the question presented in the instant case was not before the Supreme Court. We believe that the language of Standard Oil must be read in the light of the issue presented in the case, and that, when so read, the language does not support the contention of the counsel for the Commission.[5]

In Standard Motor Products the court upheld the Commission's cease and desist order and rejected the Section 2(b) defense of a manufacturer of automotive replacement parts on the ground that the volume discounts in the manufacturer's distributor contracts with co-operative buying groups were not individually negotiated but were a part of the seller's pricing system. The court as an additional basis for its decision stated that "it is well settled that a lowered price is within § 2(b) * * * only if it is used defensively to hold customers rather than to gain new ones." The only authority cited for the court's statement is Standard Oil. Since we believe Standard Oil does not limit Section 2(b) protection to lowered prices made solely to retain customers, Standard Products is not persuasive authority for the Commission's ruling.

Counsel for the Commission contends that the legislative history of Section 2(b) shows a Congressional intent to limit the scope of the "meeting competition" defense. Upon considering the legislative history cited by counsel, we conclude that at best it is inconclusive on the question. More importantly, we do not believe it is necessary to resort to the legislative history. The proviso to Section 2(b) permits a seller to show that his lower price "to *any* purchaser or purchasers was made in good faith to meet an equally low price of a competitor." (Emphasis supplied). This language is clear and unambiguous. The plain meaning of the term "purchaser" is one who buys, and no connotation of the term is justified that would limit its meaning to those purchasers who had been customers

5. Cf. Report of the Attorney General's National Committee to Study the Antitrust Laws, (1955) at 184, which stated:
"Standard Oil does not confine the 'good faith' proviso solely to *defensive* reductions to retain an *existing* customer. The Supreme Court in that opinion merely employed language describing the case at bar; it did not promulgate a general doctrine surrounding each seller with a protected circle of customers which may be exploited without fear of a rival's price attacks. Such a limitation in any event would not be in keeping with elementary principles of competition, and would in fact foster tight and rigid commercial relationships by insulating them from market forces."
See, also, H.Rep. No. 2438, 82d Cong., 2d Sess. p. 4, where the House Committee on the Judiciary, after a study of the Standard Oil decision, concluded that the "question of applying the good faith defense in obtaining customers, has not been as yet decided by the courts. * * *"

of the seller before his lowering of prices to meet those of a competitor.

There are other reasons, however, for us to conclude that the Commission is not justified in making the distinction that a seller's good faith competitive price reduction to old customers is permissible under Section 2(b) while the same reduction to a new customer is not. These reasons, which are discussed by Commissioner Elman in his dissenting opinion, are first, that the distinction made by the Commission is unworkable as a practicality, and, second, that it is economically unsound.

Commissioner Elman makes the point that the Commission's distinction is unworkable because of the practical difficulty in distinguishing between an old and a new customer. As he says:

> "Does an 'old' customer retain that status forever, regardless of the infrequency or irregularity of his purchases? Suppose an 'old' customer transfers his business to another seller offering a lower price; how long a period of grace does the first seller have in which to meet the lower competitive price? If he waits too long, will the 'old' customer be regarded as a 'new' one, and hence unapproachable because Section 2(b) no longer applies? If so, how long is too long? And if not, does it suffice that the buyer has at any time in the past, no matter how remote, been a customer of the respondent?"

He concludes that it would be difficult, if not impossible, to solve the problems raised by these questions and at the same time provide businessmen with reasonable guidance concerning what they may or may not lawfully do. We are in accord with these views.

That the distinction between old and new customers is economically unsound and would defeat the purpose of the Robinson-Patman Act seems obvious. If, in situations where the Section 2(b) proviso is applicable, sellers could grant good faith competitive price reductions only to old customers in order to retain them, competition for new customers would be stifled and monopoly would be fostered. In such situations an established seller would have a monopoly of *his* customers and a seller entering the market would not be permitted to reduce his prices to compete with his established rivals unless he could do so on a basis such as cost justification. Moreover, the distinction would create a forced price discrimination between a seller's existing customers to whom he had lawfully lowered his prices under Section 2(b) and a prospective new customer. These results, we believe, are incompatible with the purpose for which the Robinson-Patman Act was enacted.

Since the Commission's order is based on an incorrect interpretation of the statute, it must be set aside and the Commission directed to dismiss its complaint. It is so ordered.