George J. KRIEGER et al., Plaintiffs,

v.

TEXACO, INC., Defendant.

Civ. No. 9245.

United States District Court,
W. D. New York.

Feb. 1, 1972.

On Motion Dec. 10, 1973.

Bertil L. Peterson, Buffalo, N. Y., for plaintiffs.

Robert F. McGinnis, New York City, and Raichle, Moore, Banning & Weiss, Buffalo, N. Y. (David C. Diefendorf, Buffalo, N. Y., of counsel), for defendant.

CURTIN, District Judge.

Now more than ten years old, this action is still in the discovery stage. Pending at present is defendant's motion for an order pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure imposing sanctions for plaintiffs' failure to comply with the court's order entered June 4, 1971. The sanction sought is preclusion of proof by plaintiffs of secondary damages. In pertinent part, the order required identification of the documents used in computing each element of the secondary damages claimed by plaintiffs, also referred to as indirect damages or damages for loss of business.

It is not necessary to set forth in detail the events in this litigation prior to the discovery sought by defendant. Suffice it to point out that, because of long periods of inactivity on the part of plaintiffs, the case appeared on the dismissal calendar on a number of occasions, but has not been dismissed. Plaintiffs filed a note of issue shortly before the last notice of dismissal and, at the subsequent appearance before the court, plaintiffs' counsel represented that plaintiffs were ready for trial. The court then gave defendant the opportunity to conduct discovery, which defendant's counsel stated had been deferred up to that time because of plaintiffs' apparent lack of interest in pursuing the litigation.

Between December 1969 and August 1970, defendant's counsel deposed the persons remaining as plaintiffs in the action and a nonparty witness, the former Secretary of the Buffalo and Suburban Gasoline Retailers' Association. On September 22, 1970 defendant served seven interrogatories on plaintiffs. No answers or objections to the interrogatories were filed within the 30-day limit provided in Rule 33(a). It was not until January 29, 1971, the date for which the court had scheduled a pretrial conference, that plaintiffs served their answers to the interrogatories. Dissatisfied with the answers, defendant moved by papers filed February 8, 1971 for an order to compel answers. Fed.R.Civ.P. 37(a). Defendant's motion asserted that plaintiffs' answers to some of its interrogatories did not give any of the information requested, but merely referred defendant to a mass of records, while the answers to the remaining interrogatories were evasive, unresponsive and incomplete. Argument was held on the motion on February 26, 1971 and, on March 13, 1971, the court ordered that plaintiffs' answers be stricken for insufficiency and that new answers be submitted by April 30, 1971. Following a suggestion made by the court at the February 26 hearing, counsel for plaintiffs and defendant met and discussed what information defendants sought by their interrogatories. Plaintiffs served their new answers on April 30, 1971 and, on May 14, 1971, defendant again moved against the answers, seeking dismissal of plaintiffs' action for failure to comply with the court's order of March 13. Fed.R.Civ.P. 37(b)(2)(C). Defendant asserted that the new answers

were deficient in the same way that the prior answers had been. On May 21, 1971 further argument was heard by the court and, on June 4, the court entered the order upon which the pending motion is based. In requiring that plaintiffs submit by July 16, 1971 a complete and detailed specification of the documents used in computing their secondary damages or relating to the computation, the order sought to elicit from plaintiffs the information remaining to be given in answer to defendant's interrogatory numbered 7. On July 16, plaintiffs served twenty-three affidavits pertaining to their secondary damage claims and, on August 23, defendant made the motion now before the court.

The court has examined the answers submitted by plaintiffs. Affiant De-Marco appears to set forth information relating to a claim for breach of contract rather than to a claim for loss of business. The remaining affidavits fall into three categories: (1) those which support plaintiffs' claims to secondary damages by reference to income tax returns, (2) those which support the claims by reference to reductions in the number of gallons of gasoline purchased multiplied by a certain number of cents per gallon, and (3) those which support the claims by reference to the number of gallons of gasoline purchased multiplied by a certain number of cents per gallon.

Into the first category fall thirteen affidavits. To compute his damages, the affiants Brier, Carlson, Fragale, Guzek, Jaekle, Kieta, Lawless, Rozborski, Sasiadek and Swanick each designated a base year and, from income tax returns, calculated the reduction in profits, or profits plus wages to employees, which occurred in the succeeding years constituting the claim period. Affiant Helenbrook inexplicitly claimed as secondary damages the profit reported on his income tax return for 1961. Affiant Kemp claimed loss on a sale of equipment and operating loss reported on his income tax return for 1961. Affiant Wilson claimed reductions in profit reported on his tax returns for 1958, 1960 and 1962 compared to his base year 1957 and net loss for 1962. None of the claims is supported by more than vague references to such items as "Schedule C of Federal Tax returns," "personal income tax State return" and "entries in my check book for payroll expenses." Even if the affidavits sufficiently identify the documents named therein, they do not specify the business records underlying the information reported in the documents so that defendant can request access to the records in order to determine whether the secondary losses resulted from the alleged price discrimination by defendant or from other business conditions.

Six affidavits fall into the second category. To compute damages, each of these affiants designated a base year, computed from defendant's gasoline invoices reductions in the number of gallons of gasoline purchased in the succeeding years constituting the claim period and multiplied the reductions by a certain number of cents per gallon. The gallonage figures of each affiant have been made available to defendant. As to the business records or other documents upon which the multiplier is based, affiants Doxtater, Nowak and Smith specified none. Affiants Caster and Krieger attached to their affidavits tables which set forth the wholesale price per gallon, the retail price per gallon, and the margin per gallon for the gasoline handled in the base year and the claim period. The multiplier which they used in determining their loss of business was said to be less than the margin shown in the tables. Other than a reference to "day sheets," no specification of the documents from which Caster derived his table was given. Krieger's table, however, specified ledger records for certain charge customers from which the prices in the table were derived. Affiant Kuntz stated that he retained no records which would substantiate the multiplier used in computing his loss.

Three affidavits fall into the last category. Each affiant designated a base period and multiplied the number of gal-

lons purchased in the succeeding years constituting the claim period by a certain number of cents per gallon. The gallonage figures of each affiant have been made available to defendant. Affiant Van Every attached to his affidavit tables prepared from his daily records which set forth the wholesale price per gallon, the retail price per gallon, and the margin per gallon for the gasoline handled by him in the claim period. The multiplier which he used in determining his loss of business was said to be the decline in his margin during the claim period. Van Every did not specify the documents from which his tables were derived. Affiant Kipp used a multiplier similar to Van Every's but offered a supporting table for only one of his claim periods, saying that his records had been destroyed as to the other period, January 9, 1959 to March 9, 1960. Like Van Every, Kipp did not specify the documents upon which his table was based. Affiant Riester used a multiplier like Van Every's but offered no data to support his estimate of the decline in his margin.

■ It is apparent from the foregoing discussion of the three categories that Kuntz, Riester and Kipp (for January 9, 1959 to March 9, 1960) are unable to specify the documents upon which their secondary damage claims are based either because no records were kept or because the records have been destroyed. Their claims should not be precluded at the discovery stage, although their proof may fail at trial. *See* Dorsey v. Academy Moving & Storage, Inc., 423 F.2d 858 (5th Cir. 1970). At the same time, however, Kuntz, Riester and Kipp will not be allowed to profit by their inability now to specify documents supporting their claims. If they find that records supporting their claims exist, they must immediately notify defense counsel and specify the documents. Furthermore, any documentation Kuntz, Riester and Kipp offer at trial will not be accepted into evidence unless the court is satisfied that it could not have been specified prior to trial.

■ It also appears from the discussion of the three categories that the only affidavit specifying the documents upon which the secondary damage claim is based is that of Krieger. Therefore, he should not be precluded from attempting to prove his secondary damage claim by the documents specified in the table attached to his affidavit.

The affidavits of plaintiffs other than Krieger, Kuntz, Riester and Kipp (for January 9, 1959 to March 9, 1960) fail to specify the documents upon which the secondary damage claims are based, or to provide reasons excusing the failure. The question before the court is whether these other plaintiffs should be precluded from proving their claims at trial.

■ Under Rule 37(b)(2), the court in which an action is pending may impose a variety of sanctions upon a party for failure to comply with an order compelling discovery. The flexibility of the Rule gives the court a broad discretion with regard to sanctions, and in exercising its discretion the court should take into account the full record of the case before it. *See* Diapulse Corp. of America v. Curtis Publishing Co., 374 F.2d 442 (2d Cir. 1967). Upon the record of the instant case, it is entirely proper to preclude proof of secondary damages by all plaintiffs except Krieger, Kuntz, Riester and Kipp, for counsel for plaintiffs has been given two opportunities to submit sufficient answers to interrogatories. *See* Life Music, Inc. v. Broadcast Music, Inc., 41 F. R.D. 16 (S.D.N.Y.1966). The present case is not one in which an inability to locate and to specify records has been shown, as were Dorsey v. Academy Moving & Storage, Inc., *supra*, and Campbell v. Johnson, 101 F.Supp. 705 (S.D.N.Y. 1951).

Therefore, it is the order of the court that proof of claims of secondary damages by plaintiffs Breier, Carlson, Caster, DeMarco, Doxtater, Fragale, Guzek, Helenbrook, Jaekle, Kemp, Kieta, Lawless, Nowak, Rozborski, Sasiadek, Smith, Swanick, Wilson, Van Every and Kipp

(other than for January 9, 1959 to March 9, 1960) will be precluded at trial. Plaintiffs Kuntz, Riester and Kipp (for January 9, 1959 to March 9, 1960) may offer proof of secondary damages subject to the conditions hitherto discussed. Plaintiff Krieger may offer proof of secondary damages by the documents specified in the table attached to his affidavit.

So ordered.

## ON MOTION FOR SUMMARY JUDGMENT

Before the court for decision is defendant's motion for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. This action was instituted by former and present Texaco retail gasoline dealers in the Buffalo, New York area seeking to recover for alleged price discrimination in violation of Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a). Plaintiffs contend that the discrimination occurred during the period July 1957 until August 1962, when Texaco sold gasoline to Ben Glaser, a Buffalo area retail dealer, at a price more favorable than it sold to the plaintiffs. They claim that this constituted an illegal price discrimination.

Defendant bases its motion for a summary judgment upon two grounds. First is that under Section 2(b) of the Robinson-Patman Act [15 U.S.C. § 13(b)], even where all of the elements of a price discrimination claim are proven, there is no violation if the seller's lower price "was made in good faith to meet an equally low price of a competitor." In support of its motion, the defendant has submitted affidavits of Alan H. Glaser, son and associate of Ben Glaser, and E. S. Bennett, Jr., who from 1955 until 1962 was Assistant Division Manager for Texaco in the Buffalo division.

Texaco's second ground for summary judgment is that plaintiffs are unable to satisfy the legal requirement of proof with respect to proximate injury and damage. Texaco argues that there is a total absence of any specific sales lost to any Glaser station and no proof that any plaintiff lowered his price specifically to meet some lower price charged by Glaser.

■ The affidavits submitted by Texaco in support of its first ground are uncontroverted by plaintiffs. From 1957 until 1962, Ben Glaser operated four to six retail gasoline stations in the Buffalo area, all selling Texaco gasoline. Because of his substantial volume of sales, he was approached during this period by a number of Texaco competitors urging him to take on other brands. Although they offered him lower prices, he was not anxious to switch from Texaco because of his long connection with that company. However, he communicated these offers to Texaco and, on one occasion in 1961, he terminated the purchase of Texaco gasoline at one station. The affidavits detail the history of the negotiation between the parties and make it clear that, when the price to Glaser was reduced by Texaco, it was done only to meet the competition of the other competitors. Defendant Texaco is entitled to summary judgment on this ground, F. T. C. v. Sun Oil Co., 371 U.S. 505, 514, 83 S.Ct. 358, 9 L.Ed.2d 466 (1963); Jones v. Borden Co., 430 F.2d 568 (5th Cir. 1970).

■ The defendant Texaco is also entitled to summary judgment on the ground that the plaintiffs cannot satisfy the legal requirement of proof with respect to proximate injury and damage. At the present time, twenty-seven plaintiffs remain in the lawsuit. One plaintiff, Richard Yager, has admitted that he does not have a claim. Twenty-two plaintiffs depend upon the theory of automatic damages, claiming that damages accrue in the amount of the discrimination multiplied by the quantity of gasoline purchased by each plaintiff at the higher price. This theory was rejected in Enterprise Industries, Inc. v. Texas Co., 240 F.2d 457 (2d Cir.), cert. denied, 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d

914 (1957). In this court's order of February 1, 1972 in which the claims of the twenty-two plaintiffs were discussed, the court permitted plaintiffs Kipp, Krieger, Kuntz and Reister to proceed further.

Defendant argues that an analysis of all of the depositions and other proceedings can only lead to the conclusion that none of these four plaintiffs may prevail and their action must be dismissed on this motion for summary judgment. Plaintiff George Reister's affidavit claims that he suffered $910 in damages because at some time between 1958 and 1962 he sold 91,000 gallons of gasoline and "during that time my mark-up was reduced by at least one cent in order to meet competition by Texaco stations receiving assistance from Texaco, and I therefore incurred a loss of at least $910." The stations Mr. Reister checked to determine competitive prices were not Glaser stations and he does not mention Glaser in his affidavit. There is no basis for attributing his claim for loss to the price charged by Texaco to Glaser.

Plaintiff Karl Kipp claims that there was a three-cent decline in margin during the period from January 9, 1959 to March 9, 1960. However, he does not connect this loss to Glaser or any activity on the part of the defendant Texaco causing his loss. Plaintiff Francis A. Kuntz claims that his gallonage declined after 1956 and finally totalled 272,936 gallons. In order to compute his damage, he multiplied the gallonage figure by three cents, but is unable to explain how he arrived at the three-cent figure. In his affidavit he does not mention Glaser, but does claim that two other Texaco stations undersold him during 1957 to 1960.

Plaintiff George J. Krieger alleges damages with respect to two stations, one in Kenmore and the other on Rhode Island Street in Buffalo. However, in his deposition he stated that he was not making a claim in regard to the Kenmore station. He claims that the gallonage declined at the Rhode Island station progressively after 1957. To arrive at a damage figure, he multiplied gallonage by three cents. He explains his use of three cents as follows: "The three cent per gallon claim is based on a computation of retail prices from ledger sheets and cash register rolls, showing that the mark-up after overhead expense was at least three cents per gallon." There is no claim that the lost gallonage went to the Glaser stations. In fact, he mentions three stations closer to him than any Glaser station which charged lower prices than himself. The defendant is also entitled to summary judgment against all plaintiffs on this second ground. Enterprise Industries, Inc. v. Texas Co., *supra*; McCaskill v. Texaco, Inc., 351 F.Supp. 1332 (S.D.Ala.1972).

The Clerk is directed to enter a judgment in favor of the defendant and against all plaintiffs, dismissing the complaint with costs.

So ordered.