**Edward C. CADIGAN, on behalf of himself and all others similarly situated, Plaintiff-Appellant,**

**v.**

**TEXACO, INC., and Wickland Oil Co., Inc., doing business as King Dollar, Inc., Defendants-Appellees.**

No. 72–1194.

United States Court of Appeals, Ninth Circuit.

Feb. 19, 1974.

M. K. Tescher, Jr. (argued), of Lopez, Kennedy & Srite, John D. Barr, of Coshow Barr & Tocher, Redding, Cal., for plaintiff-appellant.

Nels A. Christensen, Chico, Cal. (argued) for Wickland.

Robert E. Laughlin, of Laughlin, Craig & Christensen, Chico, Cal., William Tousley Smith, New York City (argued), for Texaco.

Robert K. Puglia, of McDonough, Holland, Schwartz, Allen & Wahrhaftig, Sacramento, Cal., for defendants-appellees.

## OPINION

Before KOELSCH, GOODWIN and WALLACE, Circuit Judges.

KOELSCH, Circuit Judge:

Plaintiff Cadigan appeals from summary judgment rendered in favor of defendants Texaco, Inc., and Wickland Oil Co.

In his complaint plaintiff alleges a violation of § 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a) et seq., by Texaco, and of § 2(f) by Wickland. These sections provide:

"(a) It shall be unlawful for any person engaged in commerce, . . . , either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce,

\* \* \* \* \* \*

"(f) It shall be unlawful for any person engaged in commerce. . . . , knowingly to induce or receive a discrimination in price which is prohibited by this section."

Both defendants concede in their answers that the price at which Texaco sold to Wickland was lower than that charged plaintiff, but, relying on the statutory defense provided by § 2(b) of the Act,[1] allege that the discriminatory price was offered in good faith to meet the equally low price offered by Texaco's competitors.

Defendants introduced several affidavits in support of their § 2(b) defense and moved for summary judgment. Plaintiff, despite the admonition of Fed.R.Civ.P. 56(e), rested on the allegations of his complaint.

On appeal, of course, we must determine whether the pleadings and affidavits present any genuine issue as to any material fact and whether defendants are entitled to judgment as a matter of law. Finding none, and agreeing with the district court, we affirm.

The following uncontroverted facts appear from the pleadings and affidavits:

Wickland Oil Co. is the owner and operator of 15 "King Dollar" gas stations in Northern California and Oregon. One of these stations is across the street from that formerly operated by plaintiff in Redding, California. Plaintiff leased his station from Texaco and bought "Texaco" brand gasoline from Texaco for resale to the public. Before September 1, 1967, Wickland purchased its gasoline requirements from Richfield; the gas was rebranded and sold to the public as "Rocket" gas.

During August, 1966, however, Wickland had become interested in selling major brand gasoline and began negotiations with Humble Oil. Humble offered to supply Wickland's requirements of Humble's major brand gas at a discount of $.0325 per gallon of regular and $.0375 per gallon of premium off posted dealer tankwagon prices. By February, 1967, Wickland decided a switch to major brand sales by "King Dollar" stations was economically feasible, and notified Richfield of the termination of the supply arrangement for "Rocket" gas, effective after the month of August, 1967. Wickland thereafter negotiated with American Oil Co., which offered the same discount as Humble, and beginning in March, 1967, with Texaco.

Wickland informed Texaco's local sales representatives of the discounts offered

1. Section 2(b), 15 U.S.C. § 13(b), provides in part:
"(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in price or services or facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with violation of this section, . . . : *Provided, however,* That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor."

by Humble and American Oil at the outset of the negotiations, and was assured that Texaco's prices would be competitive. In mid-August, 1967, after recommendation of a higher discount by the local representatives, the Texaco home office approved an offer of discounts of $.0300 per gallon of regular and $.0325 for premium. Wickland's president expressed disappointment at the offer, but at the end of August, 1967, signed a supply agreement with Texaco, with the understanding that Texaco's local representative would continue efforts to win approval of a higher discount. In September, 1967, Wickland's "King Dollar" stations commenced selling Texaco gas, which they advertised under the "Texaco" label.

Wickland continued to inform Texaco of offers of higher discounts, and indicated that it would terminate the arrangement with Texaco if the discount was not raised. In March, 1968, Texaco approved a discount of $.0325 on regular and $.0350 on premium, thereby equalling the discount offered by Humble and American Oil on regular and remaining below that offered on premium. Wickland thereafter continued to seek lower prices from Texaco and to receive competitive offers from other companies, and in September, 1970, it terminated the arrangement with Texaco and converted to Atlantic-Richfield's "Arco" brand.

Plaintiff alleges that the price discrimination allowed Wickland's "King Dollar" stations to sell "Texaco" brand gas at a price lower than that at which he could sell the identical gas at his station across the street, and that as a result, he was driven out of business. Nevertheless, the district court's grant of summary judgment was entirely appropriate. Section 2(b) provides a complete defense to a prima facie case of price discrimination, despite any adverse effect on competition created by the price differential. Standard Oil Co. (Indiana) v. FTC, 340 U.S. 231, 71 S.Ct. 240, 95 L.Ed. 239 (1951). The sole permissible inference which may be drawn from the uncontroverted facts is that Texaco offered the discriminatory discounts in a good faith effort to secure Wickland's business by matching prices offered by Texaco's competitors, Humble and American. Plaintiff having failed to introduce any evidence to support a contrary finding, a summary judgment motion was appropriate to establish the § 2(b) defense to plaintiff's claim.[2] *See*, Jones v. Borden Co., 430 F.2d 568 (5th Cir. 1970); Krieger v. Texaco, Inc., 373 F.Supp. 108 (W. D.N.Y.1973).

Of plaintiff's several contentions, none has merit, and only three warrant discussion.

Plaintiff makes much of the fact that Wickland was allowed to use the "Texaco" brand name to advertise the gas "King Dollar" stations sold, arguing that price discrimination by a seller (Texaco) against its own "locked-in" retailers (plaintiff) should be "inherently illegal" under the Robinson-Patman Act when the seller also allows the independent retailer (Wickland) favored by the discrimination to use the brand names.

We see no justification for engrafting such an exception onto the § 2 (b) proviso; the Act, in express terms, makes price discrimination illegal, not the competitive use of a brand name. Indeed, the construction appellant urges on us would defeat the competitive purposes of the Act by preventing cost competition in products such as gas once a brand name is affixed.

**2.** A buyer in Wickland's position is entitled to rely on the seller's § 2(b) defense when charged with receiving the benefits of an illegal price discrimination in violation of § 2(f), Automatic Canteen Co. v. FTC, 346 U.S. 61, 74, 73 S.Ct. 1017, 97 L.Ed. 1454 (1953), except in instances when it has knowingly manipulated the competitive bidding through false or disingenuous reporting of competitor's bids to induce lower bids. *See* Beatrice Foods Co., [1967–70 Transfer Binder] Trade Reg.Rep. ¶ 19,045 (FTC 1970). Plaintiff has not suggested that Wickland is not entitled to the protection of Texaco's § 2(b) defense.

Appellant's argument might be more appropriately construed to assert that summary judgment is improper because a triable issue of fact remains—whether Texaco's sale of branded gasoline at a lower price to the Wickland station operating across the street from plaintiff's Texaco station evidences bad faith and defeats the § 2(b) defense. While there may be cases in which the requisite good faith is lacking because the competitor's lower price is met primarily in order to drive a retailer out of business, this is not such a case. Plaintiff has not offered any evidence to support an inference of anti-competitive intent other than the sale of the branded product. In the face of the fact that Texaco had a financial stake in the continuing operation of its own leased station, the fact that Texaco's discounts were lower than its competitors', and the defendants' affidavits detailing the negotiations, the sale alone is insufficient to defeat summary judgment.

■ Plaintiff also contends that summary judgment was improperly rendered because defendants, not having shown that the prices of Texaco's competitors were lawful, failed to bring themselves within the § 2(b) proviso. We reject this contention. A defendant need not prove the actual lawfulness of his competitor's price in order to secure the protection of the proviso. The well established rule is that § 2(b) is satisfied unless it appears that the defendant either knows the price being met is unlawful or that it is inherently unlawful. Standard Oil Co. v. Brown, 238 F.2d 54 (5th Cir. 1956).[3] See Balian Ice Cream Co. v. Arden Farms Co., 231 F.2d 356, 366 (9th Cir. 1955), cert. denied 350 U. S. 991, 76 S.Ct. 545, 100 L.Ed. 856

(1956). Plaintiff has offered no proof to suggest that the competitor's prices were unlawful, much less that Texaco knew them to be such.

■ Finally, appellant argues that the § 2(b) defense can be asserted only when the price discrimination is made to retain old customers, and not, as in this case, when a seller meets competitive prices in order to obtain a new customer. The distinction is unsound and has been rejected by the courts, Sunshine Biscuits, Inc. v. FTC, 306 F.2d 48 (7th Cir. 1962); see Jones v. Borden Co., supra; and is not applied by the Federal Trade Commission, see Beatrice Foods Co. [1967–70 Transfer Binder] Trade Reg.Rep. ¶ 19,045 (FTC 1970). We agree with the Seventh Circuit that:

"If, in situations where the Section 2(b) proviso is applicable, sellers could grant good faith competitive price reductions only to old customers in order to retain them, competition for new customers would be stifled and monoply be fostered. In such situations an established seller would have a monopoly of his customers and a seller entering the market would not be permitted to reduce his price to compete with his established rivals unless he could do so on a basis such as cost justification. Moreover, the distinction would create a forced price discrimination between a seller's existing customers to whom he had lawfully lowered his price under Section 2(b) and a prospective new customer. These results, we believe, are incompatible with the purpose for which the Robinson-Patman Act was enacted." 306 F.2d at 52.

The judgment is affirmed.

---

3. As perceptively noted by the Fifth Circuit in Standard Oil Co. v. Brown, supra at 58 n. 7:

"Not only is there no precedent for requiring such proof, but it is apparent that such a requirement would practically destroy the value of the proviso, for the legality vel non of the competitor's prices depends on many facts, including what it might be doing to meet low prices of its competitors. The inquiry into these collateral issues would be endless."