[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING RE: MOTION FOR CLASS CERTIFICATION (#125) AND OBJECTIONS (#134, #151 AND #152) 
The issue presented is whether plaintiffs have satisfied the requirements of Connecticut Practice Book Sections 9-7 and 9-8
for certification of a class action. The parties have filed memoranda and other documentation setting forth their respective positions and the authorities on which they rely. The court has conducted hearing(s) on the pending motion.
 I.
The initial complaint in this action was filed on November 25, 1997. After a revised complaint was stricken in part by the court; see Maltagliati v. Wilson, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 575612 (October 22, 1998); the plaintiffs filed an amended complaint on November 4, 1998. A second amended complaint was filed February 25, 1999. CT Page 13642
The operative complaint contains eight counts, four of which are pleaded as class action counts against two defendants, Raymond Crane, Jr. (Crane) and the Ray Crane Construction Company (Crane Construction) (collectively "the defendants"). The four class action counts allege negligence (count five), reckless conduct (count six), breach of contract (count seven), and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a, et seq. (count eight). The other counts are brought in the name of Daniel and Dale Maltagliati and their minor children; they allege negligence, breach of warranty, and violation of CUTPA against the defendant William H. Wilson, the builder of the Maltagliatis' home.
The facts alleged in the class action counts are essentially as follows. The plaintiffs are all residents of Connecticut who own or inhabit buildings containing potable water systems installed by the defendants over three years prior to this action. On January 3, 1997, the Department of Consumer Protection initiated administrative proceedings against the defendant Crane. The Department claimed that solder containing greater than 0.2 percent lead was used in violation of General Statutes §25-39e and § 20-332-16 (i) of the Regulations of Connecticut State Agencies.[1]
An administrative determination found that Crane violated statutory and regulatory provisions. Crane provided the Department with a list of properties where Crane had installed or repaired water systems since 1993. The complaint alleges that the class action plaintiffs include persons on said list and persons who have consumed water from potable water systems on said list, including the representative plaintiffs, the Maltagliatis.[2]
Count five alleges that the defendants' use of solder containing lead in excess of 0.2 percent in the plaintiffs' buildings, in violation of General Statutes § 25-39e and § 20-332-16
(i) of the Regulations, constitutes negligence per se. Count six alleges that the defendants' use of such illegal solder was in reckless disregard of the rights of the plaintiffs. Count seven alleges that by engaging in said conduct, the defendants breached contracts to which the plaintiffs were either parties or third party beneficiaries. Count eight alleges that the use of the illegal solder in installing and repairing water systems constitutes a pattern of unfair and/or deceptive acts or practices in violation of CUTPA.
The plaintiffs reclaimed for oral argument an earlier motion CT Page 13643 for class certification. The plaintiffs initially filed this motion on August 31, 1998, and the defendants filed an objection thereto on October 1, 1998. This court conducted a hearing on the motion for class certification. The plaintiffs then filed a supplement to their motion for class certification, to which the defendants responded by filing a further objection. An additional hearing on the class certification motion (and the supplement thereto) was scheduled as an arguable matter on the June 21, 1999 short calendar; on that date, the parties appeared and counsel were granted leave to file additional documentation relative to the class certification issue, if they wished to do so. The defendants then filed an additional objection (File #152) (with legal and factual arguments) to the plaintiffs' motions for class certification, and its supplement, on July 20, 1999 (the last filing with regard to the class certification issue).
 II.
The requirements for certification of a class action are listed in §§ 9-7 and 9-8, of the Practice Book. "The Practice Book imposes six requirements for the certification of a class action: (1) that the class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the class; (3) that the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) that the representative parties will fairly and adequately protect the interests of the class; (5) that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (6) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[3] Crowley v. The Banking Center, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 237599 (March 6, 1992). See also Walsh v. National Safety Associates,Inc., 241 Conn. 278, 279-80, 694 A.2d 795 (1997). The requirements for bringing a class action under CUTPA are identical. See General Statutes §42-110g (b).
"The plaintiff bears the heavy burden of establishing that each requirement of the rule is met. . . . Although a trial court must undertake a rigorous analysis to determine whether the plaintiff has borne this burden successfully it has broad discretion in determining whether a suit should proceed as a class action." (Citations omitted.) Arduini v. Automobile Ins.CT Page 13644Co. of Hartford, Connecticut, 23 Conn. App. 585, 589-90,583 A.2d 152 (1990). "[T]he requirements of the rule are to be given a liberal construction." Campbell v. New Milford Board ofEducation, 36 Conn. Sup. 357, 360, 423 A.2d 900 (1980).
"Because rule 23 of the Federal Rules of Civil Procedure is substantially similar to Practice Book §§ [9-7 and 9-8], the federal case law may be used to aid [in the] construction of these rules of practice." Marr v. WMX Technologies, Inc.,244 Conn. 676, 680-81, 711 A.2d 700 (1998); see also Arduini v.Automobile Ins. Co. of Hartford, Connecticut, supra,23 Conn. App. 589.
Numerosity
The first requirement is that the proposed class be "so numerous that joinder of all members is impracticable." Practice Book § 9-7(1). "There is no `magic number' that automatically fulfills the numerosity requirement of the rule; Flowers v. Webb,575 F. Sup. 1450, 1458 (E.D.N.Y. 1983); because numerosity is tied to the impracticality of joinder under the particular circumstances of the case. 3B J. Moore, Federal Practice (2d Ed.) ¶ 23.05." Arduini v. Automobile Ins. Co. of Hartford,Connecticut, supra, 23 Conn. App. 590. "`Impracticablilty does not mean impossibility, but only that the joinder of all members of the class would be difficult or inconvenient' Riordan v. SmithBarney, 113 F.R.D. 60, 62 (N.D. Ill. 1986)." Wood-Smith v.Diserio, Martin, O'Connor Castiglioni, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 104498 (April 29, 1991) "Apart from class size, factors relevant to the joinder impracticability issue include judicial economy arising from avoidance of a multiplicity of actions, geographic disbursement of class members, size of individual claims, financial resources of class members, [and] the ability of claimants to institute individual suits . . . ." 1 H. Newberg, Class Actions (3d Ed. 1992) § 3.06, pp. 27-28.
"A conclusory allegation that joinder is impractical, or speculation about the size of the class, will not suffice to meet the requirement." Arduini v. Automobile Ins. Co. of Hartford,Connecticut, supra, 23 Conn. App. 590. "While certification may not be based on `mere speculation,' a party seeking certification need not show the exact size of the class so long as the court can draw reasonable inferences from the facts before it as to the approximate size of the class and the infeasibility of joinder." CT Page 13645Crowley v. The Banking Center, supra.
The defendants contend that plaintiffs' allegations relating to the size of the class are exaggerated. Plaintiffs allege that the class consists of the 118 homeowners on the list submitted to the Department of Consumer Protection of past or present owners of buildings on which Crane or Crane Construction worked since 1993. Defendants argue that because the claims asserted in the class action counts are based on a violation of the 0.2 percent lead limit under General Statutes § 25-39e, the class is limited to owners of those homes which have tested positive for solder containing greater than 0.2 percent lead.
Defendants' argument seems to implicate the merits of the litigation. Whether each class member establishes that defendants used solder with more than 0.2 percent lead on his or her property would present a disputed issue of fact. "[W]hether a class action is proper does not depend on the merits of the litigation. There will almost invariably be disputed questions of fact or law on the merits."[4] (Internal quotation marks omitted.) Marr v. WMX Technologies, Inc., supra, 244 Conn. 680, quoting 2 H. Newberg, supra, § 7.27, p. 23; see also Campbellv. New Milford Board of Education, supra, 36 Conn. Sup. 360. The plaintiffs are not required to establish the exact size of the class, but merely an approximation of potential claimants.
Understandably, defendants have not argued that a proposed class size of 118 would be too small to meet the test for certification. But, plaintiffs have not established that joinder necessarily would be impracticable. They have alleged that 118 property owners are possibly class members, and have attached to their motion the list of the 118 properties with respect to which the defendants have performed plumbing since 1993. They have not produced evidence that any appreciable number of these property owners are interested in pursuing a class action. See Kohn v.American Housing Foundation, Inc., 178 F.R.D. 536, 540 (D. Colo. 1998) (taking into consideration number of plaintiffs who have sought to join the action in ascertaining the potential class size); Independent School District No. 89 v. Bolain Equipment,Inc., 90 F.R.D. 245, 247-48 (1980) (rejecting plaintiffs allegations regarding class size because few members of alleged class expressed interest in participating in the action); cf.Makuc v. American Honda Motor Co., 835 F.2d 389, 394-95 (1st Cir. 1987) (considering lack of evidence that others were injured as a result of product defect even though plaintiff produced evidence CT Page 13646 as to approximately how many had vehicles with defect in question). That the class will number 118, or even approximate that number, is, at this point, speculative. The records of the Department's administrative action against Crane, which plaintiffs submitted as part of the supplement to their motion for class certification, indicate that a significant number of the homes on the list passed sample tests conducted in conjunction with the resolution of the administrative action. The plaintiffs produced no evidence that any of the owners of those properties disputed the test results. Thus, while this court must be cautious in not evaluating the merits of the action at this stage, it seems that the 118 should, at best, be viewed as the upper limit with respect to the size of a potential class.
Even assuming that a sunstantial number of the homeowners on the list would have an interest in joining the class, such may not constitute so great a number that joinder would necessarily be impracticable, absent other considerations. See, e.g., In reAnthracite Coal Antitrust Litigation, 78 F.R.D. 709, 715 (M.D. Pa. 1978) (finding that joinder of 141 members would not be impracticable); Minersville Coal Co. v. Anthracite Export Assn.,55 F.R.D. 426, 428 (M.D. Pa. 1971) (finding that joinder of 330 members would not be impracticable).[5] The list of property owners indicates that the properties in question are all located in Connecticut, with an overwhelming majority in the greater Hartford area. Therefore, members of the class would be easy to identify, given limited gebgraphic dispersion. Proximity and ease of identification tend to make joinder more practicable. See, e.g., Garcia v. Gloor, 609 F.2d 156, 160, vacated on other grounds, 618 F.2d 264 (5th Cir. 1980) (finding that numerosity requirement was not met where proposed class members were easily identified and all lived in a compact geographical area); Hum v.Dericks, 162 F.R.D. 628, 634-35 (D. Hawaii 1995) (finding that plaintiff failed to show that joinder of 200 potential class members was impracticable where most of the proposed class members resided within the jurisiction); Independent SchoolDistrict No. 89 v. Bolain Equipment, Inc., supra, 90 F.R.D. 248
(considering, inter alia, limited geographic area involved in finding that proposed class of up to 600 members failed to satisfy numerosity requirement); see also Ardrey v. FederalKemper Ins. Co., 142 F.R.D. 105, 110 (E.D. Pa. 1992) (acknowledging the fact that members of proposed class of up to 200 individuals were located closely together makes the court's decision difficult). While plaintiffs allege that joinder would be impracticable in the circumstances presented here, they have CT Page 13647 not met the burden of producing evidence (other than the Department's list) to substantiate that claim. On the limited information before the court, an accurate estimate of the potential size of the class and, therefore, an informed assessment regarding the feasibility of joinder cannot readily be made at this point (either directly or inferentially) without resorting to speculation.[6] Although the issue is a close one, and recognizing that the rule is to be liberally construed, the plaintiffs, in my view, based on the record established, have not met their burden with respect to the numerosity requirement.
Commonality
"[C]ommonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." Marr v. WMX Technologies, Inc., supra, 244 Conn. 682. "The requirement of commonality does not require a complete identity of legal and factual issues among all class members. SeeJohnson v. American Credit Co. of Georgia, 581 F.2d 526, 532 (5th Cir. [1978]); Long v. Thornton Township High School District,
[82 F.R.D. 186, 189 (N.D. Ill. 1979)]. It only requires that some common questions exist, not that they predominate. Inmates ofLycoming County Prison v. Strode, 79 F.R.D. 228, 233 (M.D. Pa. [1978]). Thus, the mere fact that there may be factual differences is not fatal to class certification; Like v. Carter,448 F.2d 798, 802 (8th Cir. [1971]), cert. denied, 405 U.S. 1045, [92 S.Ct. 1309, 31 L.Ed.2d 588 (1972)]; 50 that where the question of basic liability can be readily established by common issues the case is appropriate for a class action. Gold StrikeStamp Co. v. Christensen, 436 F.2d 791, 796 (10th Cir. [1970]) . . . In short, commonality is satisfied where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated.' Gordon v. ForsythCounty Hospital Authority, Inc., 409 F. Sup. 708, 717-18 (M.D.N.C. [1976]), aff'd in part, vacated in part, 544 F.2d 748 (4th Cir. [1976])." (Emphasis added), Campbell v. New Milford Board ofEducation, supra, 36 Conn. Sup. 362.
Plaintiffs' complaint includes a class action count under CUTPA. One of the issues central to a CUTPA claim is whether the defendants engaged in an unfair or deceptive practice. Resolution of this issue is central to the CUTPA claim of each individual class member. See Walsh v. National Safety Associates, Inc.,
CT Page 1364844 Conn. Sup. 569, 584, 695 A.2d 1095 (1996), aff'd, 241 Conn. 278,694 A.2d 795 (1997).
Issues of damages unique to certain class members do not defeat commonality. Marr v. WMX Technologies, Inc., supra,244 Conn. 682. "It may be that if the common questions are proven, differing amounts of damages will be claimed . . . Such a scenario of individual questions remaining after common questions have been resolved does not mean that certification should be denied on the ground that commonality is absent." (Emphasis added). Walsh v. National Safety Associates, Inc., supra,44 Conn. Sup. 584. Here, it is my view, that the existence of the common issue regarding an alleged violation of CUTPA satisfies a commonality requirement.[7]
Typicality
"The third requirement, typicality, is similar to commonality. Typicality is satisfied when the representative party's claim arises out of the same event or practice that gives rise to the claims of the class members and is based on the same legal or remedial theory." (Internal quotation marks omitted.)Walsh v. National Safety Associates, Inc., supra,44 Conn. Sup. 585.
The defendants contend that the Maltagliatis' claim is not typical because solder samples from their home have not tested positive for having greater than 0.2 percent lead. However, that argument relates to the merits of the case. "[T]here is a distinction between identifying issues that the case will present for the purpose of deciding if class action status is warranted and deciding those issues on their merits." Walsh v. NationalSafety Associates, Inc., supra, 44 Conn. Sup. 581. As stated, a factual issue exists in this regard since plaintiffs have submitted a copy of a report of a laboratory test of a solder sample from the Maltagliatis' home reflecting a result of greater than 0.2 percent lead. See: fn. 4, supra. Thus, the Maltagliatis' claim involves the factual question of whether solder containing greater than 0.2 percent lead was used on their home.
The defendants also note that the Maltagliatis, unlike the other members of the proposed class, refused to permit the Department of Consumer Protection to implement corrective measures with respect to the plumbing done by Crane in their home. However, that circumstances does not alter the reality that CT Page 13649 the Maltagliatis' claim arises from the same pattern of events — the defendants' alleged use of solder with excessive lead — that gives rise to the claims of the class in general. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993). It is concluded that the plaintiffs have satisfied the typicality requirement.
Adequacy
"Adequacy, the fourth and final requirement of Practice Book § 9-7, is measured by two standards. First, the attorney for the class must be qualified, experienced and generally able to conduct the litigation. Second, the class members must not have interests that are antagonistic to one another." (Internal quotation marks omitted.) Walsh v. National Safety Associates,Inc., supra, 44 Conn. Sup. 586, citing In re Drexel BurnhamLambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992); see alsoGovernors Grove Condominium Assn. Inc. v. Hull Development Corp.,
supra, 35 Conn. Sup. 202.
"The issue of whether the plaintiff and his attorney will fairly and adequately protect the interests of the class has due process ramifications. As expressed by one court, `[t]he potential res judicata, or at least collateral estoppel effect of any judgment in the [class] action makes it imperative that the absent members on whom it works will not be deprived of their day in court.' Harriss v. Pan American World Airways, Inc.,74 F.R.D. 24, 43 (N.D. Cal. 1977)." Walsh v. National Safety Associates,Inc., supra, 44 Conn. Sup. 586.
The defendants do not question the competence or diligence of counsel with respect to representing a certified class; the court is familiar with the outstanding professional qualifications and experience of counsel, and considers him a particularly able advocate to promote the interests of members of the proposed class. The defendants, however, emphasize that the Maltagliatis,on advice of counsel, refused to permit the Department of Consumer Protection to implement remedial measures on their home. It is my opinion, that advising the Maltagliatis regarding remediation offered by the Department bears only remotely, if at all, on counsel's adequacy to effectively represent class CT Page 13650 members. This motion for class certification should not be denied on that basis.
The second prong of this requirement relates to the adequacy of the Maltagliatis as class representatives. The plaintiffs must be members of the class they seek to represent. See Fetterman v.University of Connecticut, 41 Conn. Sup. 141, 143, 559 A.2d 246
(1988), citing Sosna v. Iowa, 419 U.S. 393, 403, 95 S.Ct. 553,42 L.Ed.2d 532 (1975).
The plaintiffs allege that they are members of the putative class. There is conflicting evidence as to whether Crane or Crane Construction used solder with excessive lead in the Maltagliatis' home. As previously indicated, whether the Maltagliatis ultimately prove that illegal solder was used on their property is a question relating to the merits which the court need not resolve at this time. In my view, the Maltagliatis have sufficiently demonstrated, for present purposes, that they are members of the proposed class.
The class representative may not have interests that are in conflict with the class as a whole. See, e.g., Walsh v. NationalSafety Associates. Inc., supra, 44 Conn. Sup. 586-88. The defendants have not argued that the Maltagliatis' interests are in conflict with those of the class; therefore, it is concluded that the Maltagliatis would adequately protect the interests of the class, and further, that they have satisfied the adequacy prong of the test for class certification.
Predominance
The plaintiffs must demonstrate that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . . ." Practice Book § 9-8.[8] "The key to the requirement, however, is that the common issues predominate, not that they be dispositive of the action; In re Sugar Industry Antitrust Litigation, 73 F.R.D. 322,345 (E.D. Pa. [1976]); 50 that the fact that some individual issues may remain after the common issues are resolved is unimportant. Dolgow v. Anderson, 43 F.R.D. 472, 490 (E.D.N Y [1968]), rev'd [on other grounds], 438 F.2d 825 (2d Cir. [1971]). Thus, `predominance' does not require a complete unanimity of common questions as to all class members. Cohen v. Uniroyal,Inc., 77 F.R.D. 685, 695 (E.D. Pa. [1977]); Chevalier v. BairdSavings Assn., 72 F.R.D. 140, 150 (E.D. Pa. [1976])." Campbell v.CT Page 13651New Milford Board of Education, supra, 36 Conn. Sup. 368-69.
In arguing that the questions common to the entire proposed class predominate, plaintiffs identify the issues of whether the defendants breached contracts with the class members, whether the defendants acted negligently and/or recklessly, and whether they violated CUTPA by using solder with excessive lead. The plaintiffs argue, with respect to the four counts, that issues of liability common to the entire class turn primarily on questions pertaining to the established practices of the defendants in using solder with excessive lead. It is this single course of conduct, plaintiffs contend, that forms the basis for this action.
Defendants assert that most of the broad issues identified by the plaintiffs as being common, upon analysis, give rise to several issues which are entirely individual in nature. Such individual issues include whether Crane used solder with excessive lead on each class member's property, when such solder was used, whether such solder was later removed, whether anyone else worked on each home's water system, and whether such other persons used solder with excessive lead.
While central issues may be common to the entire class, it would seem that the resolution of those issues will involve evidence unique to each member of the proposed class. "When the resolution of a common legal issue is dependent upon factual determinations that will be different for each purported class plaintiff . . . courts have consistently refused to find commonality and have declined to certify a class action." LibertyLincoln-Mercury, Inc. v. Ford Marketing Corp., 149 F.R.D. 65, 76
(C.D.N.J. 1993), and cases cited therein. Here, the issue of liability is of an individual nature and would be dependent upon individualized factual determinations.
While the plaintiffs characterize the cause of each class member's damage as the defendants' "course of conduct," the harm allegedly caused each member of the proposed class resulted from some separate, distinct act or incident involving these defendants. The class members were not all injured as a result of one single act or event. See Kohn v. American Housing Foundation,Inc., supra, 178 F.R.D. 543; Hum v. Dericks, supra,162 F.R.D. 639. In Kohn, the plaintiffs sought class certification in a suit alleging that the defendants had violated federal and state statutes in providing substandard medical care. The proposed CT Page 13652 class consisted of all of the persons who had resided at the defendants' nursing home during a two or three-year period. The plaintiffs asserted that the commonality and predominance requirements were met since the damage each patient suffered resulted from the defendants' practice of providing inadequate staffing and a substandard environment. The court found that the questions of law or fact common to the class did not predominate. Although the court noted that the issue of whether each class member had been caused injury as a result of the defendants' inadequate care was common to the class in general, the resolution of that issue would necessarily involve individualized inquiries as to causation and damage. The court observed that where a single event (plane crash, etc.) is the alleged cause of the various injuries, granting class certification as to liability may have merit, but distinguished cases in which several separate acts allegedly caused the various injuries. See id.
Similarly, in Hum v. Dericks, supra, the plaintiffs alleged that the defendant implanted defective artificial ligaments within each plaintiff. The plaintiffs argued that common issues predominated over individual issues on the basis that each plaintiff's injury resulted from the defendant's course ofconduct. The court disagreed and held that while the defendant's actions could be described as a single course of conduct, the alleged injuries each resulted from separate acts. Although the action included a claim of unfair and deceptive trade acts and practices based on the defendant's course of conduct, the court, nevertheless, concluded that the plaintiffs had not satisfied the predominance requirement and declined to certify the proposed class.
Plaintiffs' argument minimizes the nexus between the claimed misconduct and the resulting harm. Each plaintiff did not suffer harm stemming from the same incident, at least with respect to the counts sounding in negligence, reckless disregard, and breach of contract. This case can be distinguished from those in which the same conduct caused all of the alleged injuries. See, e.g.,Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir. 1988) ("where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy") CT Page 13653
The distinction is illustrated by two Superior Court decisions: Riggi v. Milford, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047677 (March 29, 1995), and Tibbetts v. Greenwich, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 153184 (February 27, 1997). The complaint in Riggi alleged that the defendant, the city of Milford, improperly overassessed each of the plaintiffs' properties in violation of General Statutes § 12-119. The plaintiffs filed a motion for certification of a class which would consist of the affected homeowners. The court denied certification, however, based in part on a finding that the plaintiffs had not satisfied the predominance requirement. The court, in so finding, noted: "The assessment of each affected parcel is based on that property's market value making it necessary that a reviewing court consider each property individually in its determination as to whether the assessment is or is not appropriate." Id. In other words, the proposed class' "claim" was really a series of claims.
In Tibbetts v. Greenwich the Superior Court granted certification to a class of homeowners who alleged that the defendant, the town of Greenwich, had employed an improper method in assessing their properties, resulting in an overassessment. See Tibbetts v. Greenwich, supra, 19 Conn. L. Rptr. 166. Although the defendants argued that the case was analogous to Riggi, the court disagreed and noted the distinction: "Unlike Riggi, the current case focuses on an allegedly improper assessment methodology, not high individual assessments." Id. The same act — employing the improper assessment method — allegedly was the direct cause each class member's damage.
Here, other issues identified by the plaintiffs, such as whether the defendants were negligent or reckless and whether the defendants breached contracts with the plaintiffs, are not entirely common to the entire class. Whether an issue is "common" does not merely depend on whether each class member must answer a similar question in order to establish his or her claim. Rather, the idea of commonality rests largely on whether that question can be resolved in a singular manner with respect to the entire class. See, e.g., Sterling v. Velsicol Chemical Corp., supra, 855 F.2d 1197 (stating that class action adjudication is appropriate in tort cases where a common set of facts is alleged to have caused the harm complained of, since resolution of the issue in a single inquiry "[avoids] duplication of judicial effort and [prevents] separate actions from reaching inconsistent results CT Page 13654 with similar, if not identical, facts"); cf. General TelephoneCo. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364,72 L.Ed.2d 740 (1982) (holding that claim of racial discrimination under Title VII satisfies commonality requirement only where the plaintiffs allege and show that the plaintiff was the victim of a discriminatory practice that affected the entire class; that is, where the "class claims" are fairly encompassed by the named plaintiff's claims")
The claims based upon negligence, recklessness, and breach of contract do not involve entirely common issues with respect to liability. Determination of whether the defendants are liable to each class member will involve an individualized inquiry. Each individual class member will need to establish that illegal solder was used on a potable water system in his or her property, and each class member will need to show that such use caused damage. Furthermore, because this action includes a claim based on negligence per se, each class member will have to establish than the injury he or she suffered is of the type General Statutes § 25-39e was enacted to prevent. Thus, since the case involves work on a number of different properties, it appears to the court that the issue of the defendants' "course of conduct" will result in a series of mini-trials.
Also, as defendants point out, plaintiffs' class action negligence count includes an allegation that the defendants' conduct caused personal injuries to the minor children of the plaintiffs. With respect to claims for personal injuries, the causation inquiry would be unique for each individual claimant. See Parker v. Richardson Merrell Co., supra, (noting that in tort cases, class actions are often inappropriate in light of the numerous individual determinations necessary to each plaintiff's proof of liability). Each claimant would need to show that any claimed injury was caused by lead rather than something else. The causation issue would involve evidence concerning any possible exposure to lead other than that contained in the claimant's potable water system. See Reilly v. Gould, Inc., 965 F. Sup. 588,603-05 (M.D. Pa. 1997) (outlining the various ways individuals are exposed to lead and how such exposure varies from person to person). The evidence would be unique to each individual claimant. There would be issues of fact regarding when the defendants installed improper solder, whether the solder was removed and how long it remained, and the level of lead contained in such solder. See, e.g., Breedlove v. Ohio Dept. ofTransportation, 62 Ohio Misc.2d 298, 308-16, 598 N.E.2d 242
CT Page 13655 (Ohio Ct. Cl. 1991).
At this point, only the Maltagliatis have claimed that their minor children have sustained personal injuries from drinking water from their potable water system. However, the negligence count also includes a general allegation that the members of the proposed class suffered emotional distress. Establishing liability for emotional distress can only be accomplished through evidence particular to each person involved. See, e.g., D'Amicov. Sitmar Cruises, Inc., 109 Cal.App.3d 323, 325,167 Cal.Rptr. 254 (1980).
It is my view that plaintiffs have not met their burden of establishing that issues common to the entire class predominate over issues that affect only individual class members. Proof of liability will involve a series of individualized factual determinations. On the basis of the aforesaid, it is concluded that questions common to the putative class do not predominate.
Superiority
The final requirement for class certification is that a class action be superior to other available methods for the fair and efficient adjudication of the controversy. "Where . . . common issues predominate and the parties are numerous, the superiority of a class action over individual lawsuits is obvious . . . ."Campbell v. New Milford Board of Education, supra,36 Conn. Sup. 370. Factors which tend to support a finding of superiority include: "(1) the alleged economic injuries to many proposed class members are too minuscule to justify their independent commencement of actions; (2) the proliferation of lawsuits that otherwise would result from the alleged pervasive conspiracy absent class actions will be minimized; (3) duplicative efforts by the judiciary and the litigants will be eliminated; (4) duplicative litigation expenses and attorneys' fees will be prevented; (5) defendants will be relieved from the burden of defending numerous lawsuits geographically scattered throughout the nation; and (6) inconsistent judicial decisions will be avoided." Id., quoting In re Sugar Industry Antitrust Litigation,
supra, 73 F.R.D. 358.
The plaintiffs have not produced evidence to support a finding of any of the six factors listed above. There is no evidence that a large number of lawsuits will be filed if class certification is denied or that such lawsuits, if any are filed, CT Page 13656 would be scattered over a large geographic area. Furthermore, while the plaintiffs claim that the individual monetary claims would be small, there has been no proof in that regard. The superiority requirement essentially turns on the resolution of the predominance requirement. As stated, it is my opinion that plaintiffs have not met their burden of establishing that common issues predominate over individual issues; therefore, a class action is not the best or superior method for the adjudication of the underlying dispute.
 III.
In my view, plaintiffs have not made a clear showing that they meet all of the Practice Book requirements. Because the burden of establishing each of the six requirements for class certification lies with the plaintiffs, and that burden has not been met, the motion for class certification is denied.
Mulcahy, J.